IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM M. CAUFIELD,

                Plaintiff,

v.                                  CIVIL ACTION NO.  2:11-cv-00244

EMC MORTGAGE CORPORATION,

                Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the plaintiff's Motion to Remand and for Attorneys' Fees [Docket 9].  For the reasons explained below, the plaintiff's Motion is **GRANTED** and this case is hereby **REMANDED** to the Circuit Court of Kanawha County, West Virginia.  The plaintiff is also **DIRECTED** to file, within fourteen days of the entry of this order, an accounting of its fees and costs.

I.      **Factual and Procedural History**

On March 8, 2011, the plaintiff, William Caufield, filed a complaint in the Circuit Court of Kanawha County, West Virginia against the defendant EMC Mortgage Corporation ("EMC"). (Compl. ¶ 1. Ex. 1 to Def.'s Not. Removal [Docket 1-1].)  The plaintiff alleges that EMC is the holder and servicer of his mortgage loan.  He further alleges that EMC failed to honor a loan modification agreement he made with EMC, and that EMC is attempting to collect debts that plaintiff does not owe.  Further, the plaintiff alleges that EMC "has a uniform practice of assessing illegal loan fees, including late fees and attorneys' fees."  (Id. ¶ 1.)  The plaintiff brings five claims,

two as an individual and three on behalf of himself and a class of other borrowers whose loans were serviced by EMC. The plaintiff's individual claims are for breach of contract (Count I) and illegal debt collection in violation of the West Virginia Consumer Credit Protection Act ("WVCCPA") (Count II). As an individual and on behalf of a class, the plaintiff brings claims for assessment of multiple late fees for alleged missed payments in violation of the WVCCPA (Count III), assessment of attorneys' fees and other unlawful default charges in violation of the WVCCPA (Count IV), and false representation of the amount of a claim in violation of WVCCPA (Count V). The plaintiff seeks relief in the form of civil penalties for each violation of the WVCCPA, actual and compensatory damages, attorneys' fees, pre- and post- judgment interest, and an injunction prohibiting the defendant from illegally servicing loans or foreclosing on the loans that the plaintiff alleges were serviced illegally. (Compl. at 7-8.)

On March 11, 2011, the defendant removed the case to this court, asserting that jurisdiction in this court is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Not. Removal [Docket 1], at ¶ 3.) For this court to exercise jurisdiction under CAFA, (1) the amount in controversy must be in excess of $5,000,000.00, exclusive of interests and costs; (2) at least one member of the class must be a citizen of a state different than at least one of the defendants; and (3) the plaintiff's proposed class must consist of 100 or more members. 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B). EMC asserts that "the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs." (Id. at ¶ 10.) Further, EMC asserts that it is incorporated in Delaware with its principal place of business in Texas, and that there is minimal diversity between it and the plaintiff, a resident of Kanawha County. (Id. at ¶¶ 8-9.) Finally, EMC

asserts that the plaintiff's proposed class in this case consists of well over 100 members.  (Id. at ¶¶ 5-7.)

In order to determine whether CAFA jurisdiction exists in this case, the court must determine whether the minimal diversity, amount in controversy, and proposed class size requirements are met. The defendant asserts that the amount in controversy is in excess of $9 million dollars.  According to EMC's calculations, the plaintiff's complaint seeks a total of at least $13,467.90 in statutory penalties for the class claims alone.[1]  EMC multiplies the maximum statutory penalties available for the class claims by the number of loans that it serviced in West Virginia during the applicable time period,  and asserts that the amount in controversy from the statutory penalties alone is $6,383,784.60.  (Id. at ¶ 16.)  Further, EMC argues that it serviced an additional 203 loans after the filing of the complaint on March 8, 2010, and that on or prior to March 8, 2010, it transferred the servicing of an additional 25 loans to another company.  The defendant multiplies these additional 228 loans by $13,476.90 and asserts that there is another $3,070,681.20 in controversy, creating a total amount in controversy in excess of $9 million.  (Id. at ¶ 17.)

EMC asserts that the amount in controversy may also be aggregated with the value of the injunctive relief sought by the plaintiffs.  At the time the plaintiff's complaint was filed, EMC asserts that 259 of the 474 West Virginia loans it was servicing were in default.  If, on average, $19,305.02 were due and owing per loan, the defendant asserts that the amount in controversy from

---

[1] Under the WVCCPA, the maximum statutory penalty per violation was $1,000.00 in 1974. W. Va. Code § 46A-5-101(1).  That amount is adjusted for inflation in accord with the Consumer Price Index published by the United States Department of Labor.  W.Va. Code § 46A-5-106.  The current adjusted maximum penalty under the WVCCPA, is approximately $4,500.00 per violation. *See* Bureau of Labor Statistics, Consumer Price Index Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm (last visited Jul. 8, 2011).

the injunctive relief alone would exceed $5,000,000.00. (Id. at ¶ 18c.) Further, the defendant argues that pre- and post- judgment interest may be included in the amount in controversy. (Id. at ¶ 18d.) Finally, the defendant argues that the value of the attorneys' fees and costs sought by the plaintiff may also be aggregated in calculating the amount in controversy. (Id. at ¶ 18e.)

On May 4, 2011, the plaintiff filed the instant Motion to Remand and for Attorneys' Fees [Docket 10]. The plaintiff does not dispute that the diversity requirement of CAFA is met, but argues that the "defendant has not met its burden of demonstrating that there are 100 or more class members and that $5 million is in controversy." (Plf.'s Mem. Supp. Mot. Remand & Attys' Fees [Docket 10], at 5.) The plaintiff asserts that the defendant "relies on a wholly unsupported assumption that *every* loan it serviced in that time period was serviced illegally, with maximum statutory penalties applying, and extrapolates that the amount in controversy will exceed $5 million." (Id., at 5) The plaintiff asserts that he is not seeking penalties for every loan serviced by the defendant, but rather for "each occasion the defendant (a) charged more than one late fee for a single late payment, (b) assessed attorney's fees and other unlawful debt charges, or (c) falsely represented the amount of a claim." (Id., at 6.) Citing to *Krivonyak v. Fifth Third Bank,* 2009 WL 2392092, at *5 (S.D. W. Va. Aug. 4, 2009), the plaintiff argues that, "the defendants cannot merely speculate as to the number of borrowers in the class who have actual damages," but rather that they must demonstrate beyond "conjecture" how many borrowers have suffered harm. (Id., at 5-6.)

In response, the defendant argues that it is not required to prove that it illegally serviced over 100 loans held by members of the putative class, thereby proving the plaintiff's case for him. (Def.'s Opp'n Plf.'s Mot. Remand & Attys.' Fees [Docket 20], at 1-2.) Citing to the rule adopted by this court in *Sayre v. Potts*, 32 F. Supp. 2d 881, 885 (S. D. W. Va. 1999), the defendant notes that when

the complaint does not state a specific damage amount, it need only prove by a preponderance of the evidence that the jurisdictional amount is met.  (Def.'s Opp'n Plf.'s Mot. Remand & Attys.' Fees [Docket 20], at 2.)  Moreover, the defendant asserts that the complaint "contains no objective facts to give EMC the ability to specifically identify the number of borrowers encompassed in the class and thus the amount in controversy."  (Id., at 6.)

In reply, the plaintiff asserts that the instant case is indistinguishable from *Krivonyak*. Further, the plaintiff argues that in light of this court's decision in *Krivonyak*, removal to this court on grounds of CAFA jurisdiction was clearly improper.  (Plf.'s Reply Supp. Mot. Remand & Attys.' Fees [Docket 23], at 1.)  The plaintiff asserts that the defendant has the information necessary to determine how many loans it serviced in the allegedly illegal manner described in the complaint. Using that information, the plaintiff argues,  the defendant could determine the size of the class, but has "simply chosen not to determine how many times it has employed those practices."  (Id., at 2.) Finally, the plaintiff argues that he is entitled to attorneys' fees for costs he has incurred as a result of the defendant's improper removal pursuant to 28 U.S.C. § 1447(c).  (Id., at 5.)

## II.  Discussion

### A.  Legal Standards and Precedent

An action may be removed from state court to federal court if the case could have been brought originally in federal court.  28 U.S.C. § 1441(b).  Courts construe removal jurisdiction strictly because of the significant federalism concerns removal implicates.  *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).  "If federal jurisdiction is doubtful, a remand is necessary."  *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).  For a case to be brought originally in federal court under the section of CAFA at issue in this case, 28

U.S.C. § 1332(d)(2)(A), it must have: (1) more than $5,000,000 in controversy, exclusive of interest and costs; (2) at least one member of the plaintiffs' class who is a citizen of a state different than at least one of the defendants; and (3) 100 or more class members.   28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B).   The removing party bears the burden of proving that the federal court has jurisdiction over the removed action.   *Strawn v. AT & T Mobility LLC,*, 530 F.3d 293, 298 (4th Cir. 2008).

In *Strawn*, the Fourth Circuit Court of Appeals addressed a case removed under CAFA and held that "the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction."   *Id.* at 298.   *Strawn* was a class action brought by AT&T customers who alleged that they were improperly charged a $2.99 Roadside Assistance service fee that they never wanted.   *Id.* at 294.   The complaint defined the purported class as "[A]ll consumers who: (1) purchased [an AT&T Mobility cellular] account in the state of West Virginia; and (2) were charged a $2.99 monthly charge for the Roadside Assistance service without ever requesting or enrolling for said service."   *Id.* at 295.   In the notice of removal, AT&T attached an affidavit stating that "more than 58,800 AT&T customers, excluding business customers and AT&T employees, remained enrolled in the Roadside Assistance program beyond their initial free trial period and thereby were automatically charged the $2.99 monthly fee."   *Id.* AT&T then argued that, because the statutory minimum damages were $200 per account, the amount in controversy was at least $11,760,000 and, therefore, well in excess of the required $5,000,000 threshold under CAFA.   *Id.*

The plaintiffs in *Strawn* argued that the number of persons in the class was not all people currently enrolled in the Roadside Assistance program, because it should exclude those who willingly remained enrolled in the program.   *Id.* at 295-96.   The district court then "ordered AT&T

to recalculate the estimated class size . . . to 'the more limited scope of the putative class'—the subset consisting of just those customers who did not willingly remain enrolled." *Id.* at 296.  After AT&T asserted that it could not possibly calculate such a hypothetical subset, the district court granted the plaintiffs' motion to remand because "the class alleged in the complaint includes only those consumers who were charged a fee without their authorization" and that AT&T could not prove that such a group had an amount in controversy in excess of $5,000,000 because it had no evidence of how many people comprised that group.  *Id.*

The Fourth Circuit reversed the district court in *Strawn* on the grounds that the plaintiffs defined the class not as those who were "willing or unwilling to retain the program, but rather as those who 'were not given an option.'" *Id.* at 299.  The *Strawn* court relied on the allegation that AT&T made a practice of bundling the program with new cellular service.  Furthermore, the court noted that "the complaint challenges the *initial* transaction in which customers were automatically given both telephone service and Roadside Assistance service, even if the customers opted out later after discovering the charge." *Id.*  The court then held that "[t]his class definition includes *any* AT&T customer who was charged $2.99 after being automatically enrolled in Roadside Assistance, 'without ever requesting or enrolling for said service.'" *Id.*  "The proposed class makes no distinction between automatically-enrolled customers who, upon eventually discovering the $2.99 charge, chose to ratify it and retain the service and those who, upon discovering the charges, became 'unwilling' customers." *Id.*  Accordingly, the Fourth Circuit held that AT&T's affidavit established that the matter in controversy exceeded $5,000,000 and, therefore, remand was inappropriate.  *Id.*

The Fourth Circuit addressed another CAFA removal case in an unpublished opinion and held that the removing party failed to satisfy its burden because the estimates of the amount in

controversy relied on wholly unsupported assumptions. *See Bartnikowski v. NVR, Inc.*, 307 Fed. Appx. 730, 733 (4th Cir. 2009). In that case, the removing party asserted that the "putative class members will claim to have worked an average of 5 overtime hours per week" and, therefore, the estimated amount in controversy exceeded $5,000,000. *Id.* at 733. The district court "found that [the defendant's] calculations were too speculative and that the record was too bare to allow for a reasonable estimate of the amount in controversy" and because that made federal jurisdiction doubtful, the district court remanded the action. *Id.* The Fourth Circuit affirmed, finding the amount in controversy estimate "fatally undermined by the wholly unsupported assumption . . . that Plaintiffs and class members will each claim to have worked an average of five hours of overtime per week [where there are] no records of the number of overtime hours worked by class members[.]" *Id.* at 735.

More recently, in *Krivonyak*, this court addressed CAFA removal jurisdiction and held that the removing defendants had not carried their burden of establishing beyond mere speculation that the putative class satisfied CAFA's class size and amount in controversy requirements. 2009 WL 2392092 at *6. The plaintiffs in *Krivonyak* brought an action in the Circuit Court of Kanawha County, West Virginia, individually and on behalf of "similarly situated West Virginia borrowers" for violations of the WVCCPA and other common law theories of recovery. *Id.* at *1. The defendants removed the case to this court, arguing that jurisdiction was proper under CAFA, and stating that it was "more likely than not that the amount in controversy exceeds $5,000,000, exclusive of interest and costs." *Id.* at *1. The defendants argued that because the named plaintiffs sought $4,400.00 in penalties, and the defendants had serviced in excess of 2000 loans within the state, there was over $8.8 million in controversy.

In *Krivonyak,* this court noted that speculation as to the number of persons who *may* constitute the class alone is not adequate to carry the removing defendant's burden. *Id*. at *5. There, the defendants argued that because the amount sought by the named plaintiffs was known, it could be multiplied by the total number of loans serviced to determine the amount in controversy. *Id*. at *1. This court reasoned that the defendants' calculation was based on the flawed assumption that every borrower was a member of the putative class. There was no evidence that every loan was serviced illegally. *Id.* Further, this court stated that the

> complaint must be read as a whole and in doing so it is clear that the class only includes those borrowers who were charged multiple late fees, were not credited payments, or were returned an alleged partial payment. Any borrower who was not charged any of the challenged fees simply could not be a member of the putative class. *Id.*

A defendant seeking to avail itself of federal jurisdiction must assert facts to prove the amount in controversy and cannot "merely speculate as to the number borrowers in the class who have actual damages." *Id*. The court noted that speculation as to the number of borrowers in the putative class with actual damages is not sufficient to prove that jurisdiction under CAFA is proper. *Id*. "Without knowing how many people suffered injury, it is impossible to estimate the amount in controversy." *Id.* at *6. This court determined that remand to state court was required because the defendants had not met their burden of demonstrating the requisite amount in controversy. *Id*.

**B.    Application**

In the instant case, the plaintiff argues that EMC has not met its burden of proving that the amount in controversy exceeds $5,000,000.00, nor has EMC show that there are 100 or more persons in the class. (Plf.'s Mem. Supp. Mot. Remand Atty.'s Fees [Docket 10], at 5.) Because it is undisputed that CAFA's minimal diversity requirement is met, the court's analysis will focus on

whether EMC has sufficiently carried its burden of proving by a preponderance of the evidence that this case meets the class size and amount in controversy requirements of 28 U.S.C. § 1332(d).

### 1.    Class Size

The defendant asserts that because (1) the plaintiff alleges that the putative class consists of all West Virginia citizens who had or have loans serviced by EMC within the applicable statute of limitations, and (2) EMC was servicing several hundred loans in West Virginia during the relevant time period, there are 100 or more persons in the proposed class. (Not. Removal ¶ 7.) As noted by this court in *Krivonyak*, however, when determining who is a member of the proposed class, the complaint must be read as a whole. *Id.* at *5. The plaintiff initially defines the class as "West Virginia borrowers with loans serviced by the defendant." (Compl. ¶ 1.) Further examination reveals that the complaint contains three specific class claims: assessment of multiple late fees in violation of West Virginia Code § 46A-3-112(b)(2) and (3), assessment of attorney's fees and other unlawful default charges in violation of numerous provisions of WVCCPA (§§ 46A-2-127(g), 46A-2-115(a), 46A-2-128(c)), and false representation of amount of claim in violation of § 46A-2-127(d). (Compl. ¶¶ 6-7.)

Reading the complaint as a whole, the proposed class can only consist of persons in West Virginia whose loans were serviced by EMC in violation of these WVCCPA provisions. The complaint very specifically describes the manner in which the plaintiff alleges that EMC illegally serviced his, and other loans. (Compl., ¶¶ 17, 40, 42-44, 46.) A borrower whose loan was not serviced by EMC in the manner alleged in the Complaint cannot be a member of the class. Accordingly, EMC's assertion that each and every West Virginia citizen whose loan was serviced by EMC is a member of the proposed class is unfounded. There is no evidence in the record from

which the court can determine whether the proposed class consists of ten members, a hundred members, or several hundred members.  Accordingly, I **FIND** that the defendant has failed to meet its burden of demonstrating that the proposed class consists of 100 or more members.

2.    <em>Amount in Controversy - Statutory Damages</em>

In this, as in many cases, the proposed class size is inextricably bound up with the amount in controversy.  For purposes of clarity, and in order to assess the defendant's responsibility for attorneys' fees, I will further address the defendant's assertion that the amount in controversy requirement can be met in this case.[2]  In attempting to prove that CAFA's requisite amount in controversy is met, the defendant begins by calculating the statutory relief sought by the plaintiff alone based on the three putative class claims.  (Not. Removal, at ¶ 16.)  The defendant asserts, "there is at least $13,467.90 potentially in controversy for him alone in statutory penalties."  (Id.) At the time the instant case was filed, the defendant asserts that it was servicing 474 West Virginia loans.  Given that number, the defendant argues that if it "has a practice of improperly servicing loans in the manner plaintiff alleges. . .there is certainly more than $5,000,000.00 in controversy in this case. . .(474 x $13,467.90 = $6,383,764.60)."  (Id.)  Moreover, the defendant asserts that it serviced an additional 203 West Virginia loans in the year immediately before the filing of this action, and transferred an additional 25 loans to another company on or prior to March 8, 2010.  (Id., at 17.)  The defendant then argues that the amount in controversy should be further increased by multiplying its calculation of the statutory relief sought by the plaintiff by the additional 228 loans.

---

[2]  The court notes that even the defendant seems to concede the impossibility of determining the amount in controversy on the record before the court: "[p]laintiff's complaint contains no objective facts to give EMC the ability to specifically identify the number of borrowers encompassed in the class and thus the amount in controversy."  (Def.'s Opp'n Plf.'s Mot. Remand & Attys.' Fees [Docket 20], at 6.)

-11-

"The additional statutory penalty in controversy for these additional 228 loans would be $3,070,681.20 (228 x $13,467.90 = $3,070,681.20)." (Id.)

The defendant argues that it is not required to prove its own liability by identifying which loans were illegally serviced. Rather, the defendant argues that it "need only prove the jurisdictional threshold is met based on Plaintiff's own pleadings and the record." (Def.'s Opp'n Plf.'s Mot. Remand & Atty's Fees [Docket 20], at 3.) The defendant is correct that it must prove the requisite amount in controversy based on the pleadings. Where, as here, the pleadings do not specify damages, defendants seeking removal may well face difficulty. *Bartnikowski*, 307 Fed. Appx. at 739. A plaintiff who intends to remain in state court may be able to draft its complaint without specifying damages in order to prevent removal. *Id.* at 739. The fact that the complaint does not specifically indicate damages does not relieve the party seeking removal of its burden in proving jurisdiction. As noted above, a party seeking to remove a class action based on CAFA jurisdiction must "allege in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction." *Strawn*, 530 F.3d at 296.

In order to demonstrate a basis for federal jurisdiction, the party seeking removal must present facts rather than speculation. *Krivonyak*, 2009 WL at *5. Here, the defendant has relied on conjecture to demonstrate that the amount in controversy exceeds $5,000,000. As noted above, even assuming that $13,467.90 is the amount sought by the plaintiff in statutory penalties for the putative class counts alone, there is no evidence before the court to support the defendant's premise that all of the West Virginia loans it has serviced were serviced in the same manner as the named plaintiff's loan. Although this action was brought on behalf of "West Virginia borrowers with loans serviced by the defendant" (Compl. ¶ 1.), the class may only consist of the borrowers whose loans were

illegally serviced in the manner alleged in this complaint.  Merely multiplying the number of West Virginia loans that the defendant has serviced by the amount the named plaintiff may recover cannot constitute a sufficient basis for removal jurisdiction under CAFA.  EMC's calculations are not incorrect; if every loan that EMC identified was in default, and was serviced in the same manner alleged by the plaintiff, it is certainly possible, or even probable that EMC could meet the amount in controversy requirement in statutory penalties alone.  You cannot multiply an unknown by an unknown, however; EMC bears the burden of showing by a preponderance of the evidence, beyond mere speculation and conjecture, that the requirement is actually met.  The mere possibility that the plaintiff and proposed class *could* meet that requirement is not enough to give this court jurisdiction. Accordingly, I **FIND** that the defendant has not demonstrated that the amount in controversy from the statutory damages is over $5,000,000.00.

### 3.    Amount in Controversy - Injunctive Relief

In its Notice of Removal, the defendant further asserts that additional relief, in the form of injunctive relief, pre- and post-judgment interest, and attorney's fees, should be factored into the amount in controversy.  (Id. at ¶ 18)  The amount in controversy can be "measured by the value of the object of litigation."  *Hunt v. Washington State Apple Comm'n*, 432 U.S. 333, 347 (1977). The defendant notes that 259 of the West Virginia loans it has serviced are in default.  (Id. at ¶ 18c.)  The defendant asserts that "[i]f foreclosure proceedings are prevented on the loans in default as a result of an injunction entered against EMC, the worth to the plaintiff and the putative class would reach the $5 million amount-in-controversy requirement with an average of $19,305.02 due and owing per loan."  (Id.)  The court notes that this calculation would result in an amount in controversy of $5,000,000.18.  Whether EMC intended to assert that $19,305.02 is the *actual* average due on the

defaulting loans is unclear.  It is equally likely that EMC intended to assert simply that if $19,305.02 were actually due on each loan, the value of the injunctions would exceed $5,000,000.00.  The court will assume that it is simply the inartful drafting of EMC's Notice of Removal that leads to this court's confusion, and not an attempt to muddle the facts by omitting the calculations supporting EMC's arguments.  While this calculation is obviously mathematically correct, it does nothing to support EMC's assertion that jurisdiction is proper.  EMC has provided no records showing the actual amounts due on the defaulted loans, failed to assert whether any or all of those defaulted loans are actually in foreclosure, and failed to assert or show that the value of an injunction preventing foreclosure  would equal the value of the amount remaining on the loans. Mathematical tomfoolery is no substitute for facts and  evidence.  I **FIND** that the defendant has thus failed to meet its burden of proving that the value to either party of the injunction sought by the plaintiffs is sufficient to satisfy CAFA's $5,000,000 amount in controversy requirement.

### 4.    *Amount in Controversy - Pre- and Post- Judgment Interest*

The defendant further argues that potential pre- and post- judgment interest and attorneys' fees should  be considered in calculating the amount in controversy.  First, the amount in controversy for CAFA jurisdiction is to be calculated "exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  In *Bartnikowski,* however, the Fourth Circuit held that when a state statute (like the WVCCPA) provides for the recovery of attorneys' fees they may be included  in calculating the amount in controversy.  Thus, while interest must be excluded from the amount in controversy determination, the court may consider whether an award of attorneys' fees under the WVCCPA could make up a portion of the $5,000,000.00 amount in controversy.  The Fourth Circuit also stated in *Bartinikowski*, however, that estimation of attorneys' fees at an early stage of litigation amounted

-14-

to pure speculation which "cannot be used to augment the amount-in-controversy." *Id*. at 736 n.12. Accordingly, the defendant's argument that pre- and post- judgment interest, along with attorneys' fees, should be included in calculating the amount in controversy is unsupportable.

D.      **Award of Attorneys' Fees**

The plaintiff argues that he is entitled to receive attorneys' fees from the defendant upon remand pursuant to 28 U.S.C. § 1447(c).  In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), the United States Supreme Court clarified that under § 1447(c) attorneys' fees may be shifted upon remand "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely where an objectively reasonable basis exists, fees should be denied." *Id.* at 141.  A court's decision whether to award fees under § 1447(c) is discretionary.  *Gibson v. Tinkey*, 822 F.Supp. 347, 348 (S.D. W. Va. 1993).  Section 1447(c) provides that upon remand to state court, the district court *may* order the shifting of attorney's fees" *Martin*, 546 U.S. at 709.  The purpose of awarding attorneys' fees upon remand is to "reimburse a party for the costs associated with responding to an improper removal."  *Watson v. Charleston Housing Authority*, 83 F.Supp.2d 709, 712 (S.D. W. Va. 2000).

The defendant has failed to demonstrate which, if any, loans were serviced in the manner alleged in the complaint.  Although EMC is not required to prove its own liability, if it wants to avail itself of federal jurisdiction under CAFA, EMC bears the burden of demonstrating a proper basis for that jurisdiction.  The Fourth Circuit has clearly defined the burden a removing defendant must carry in proving that jurisdiction in federal court is proper.  Removal jurisdiction is to be construed narrowly, and when jurisdiction is doubtful, remand is proper.  *Mulcahey v. Columbia Organic Chemicals Co. Inc.*, 28 F.3d 148, 151 (4th Cir. 1994).  The removing party must not only allege why

jurisdiction is proper in the notice of removal, it must also demonstrate a basis for jurisdiction when challenged.  *Strawn*, 530 F.3d at 298.  When determining whether the requisite amount in controversy and class size have been demonstrated, the court will review by a preponderance of the evidence standard.  *Bartnikowski*, 307 Fed.Appx. at 734.  Further, a removing party may not use mere speculation in demonstrating that the requisite amount in controversy and class size are met.  *Krivonyak*, 2009 WL at *5.

Upon removing this action, the defendant was or should have been aware of the Fourth Circuit's standard for removal in cases like this one.  Further, this court's recent decision in *Krivonyak* addressed almost-identical issues as those presented by the instant suit.  Faced with similar complaints, the defendants in *Krivonyak* and the instant case made similar arguments in an attempt to prove that jurisdiction under CAFA was proper.  The defendant in *Krivonyak* argued that there was a basis for jurisdiction under CAFA on the grounds that the named plaintiff sought $4,000.00 in damages, and the defendant had serviced 2000 loans, making the amount in controversy $8,000,000.  *Id*. at *1.  In the instant case, EMC has applied the same flawed reasoning in multiplying its calculation of the relief sought by the named plaintiff by the number of loans it has serviced in West Virginia, without, as the court outlined in *Krivonyak*, reading the complaint as a whole and determining the number of borrowers in the class actually proposed by the plaintiff.  (Not. Removal [Docket 1], at ¶ 16.)  Without knowing how many loans were serviced in the manner alleged in the complaint, or the actual value of the requested injunctive relief, there is no a factual basis on the record for the defendant's argument that the amount in controversy exceeds $5,000,000.  Removing defendants bear a heavy burden, and that burden cannot be met by the speculation and conjecture that formed the basis for the defendants' removal of this case.  I **FIND** that the defendant

-16-

lacked an objectively reasonable basis for seeking removal.  Accordingly, I **FIND** that an award of attorneys' fees is appropriate, and hereby **GRANT** the plaintiff's request for fees incurred as a result of the removal.

### III.    Conclusion

Because this court lacks subject-matter jurisdiction over this case, I **FIND** that it was improperly removed.  The plaintiff's Motion to Remand and for Attorneys' Fees is hereby **GRANTED**, and I order this matter **REMANDED** to the Circuit Court of Kanawha County, West Virginia.  The plaintiff's request for fees incurred as a result of the removal is further **GRANTED**, and the plaintiff is **DIRECTED** to file, within fourteen days of the entry of this order, an accounting of its fees and costs.  The scheduling conference set for July 25, 2011 is hereby **CANCELED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and a certified copy to the Circuit Clerk of Kanawha County, West Virginia.


ENTER:        July 19, 2011


Joseph R. Goodwin, Chief Judge